UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| JAMES LANG, | ) | CASE NO. 4:10 CV1243 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |


Before the court is pro se petitioner James Lang's above-captioned habeas action pursuant to 28 U.S.C. § 2241. Mr. Lang names Warden J.T. Shartle at the Federal Correctional Center in Elkton, Ohio (F.C.I. Elkton) as respondent.  Petitioner, who is incarcerated at F.C.I. Elkton, seeks an Order from this court setting aside sanctions imposed by a Disciplinary Hearing Officer (DHO) on July 28, 2009.  A Motion for Change of Venue (Doc. # 3) was also filed wherein petitioner seeks "reassignment" of this case because all F.C.I. Elkton 28 U.S.C. §2241 petitions filed in this court are allegedly filed with the undersigned and summarily dismissed. The Motion is denied and the petition is dismissed for the reasons set forth below.

*Background*

On the evening of June 23, 2009, Mr. Lang was sitting on his bed talking with another prisoner when a Unit Officer entered his living space.  The Officer announced he was performing a 'shake down' of the three man cubicle because  "someone had dropped a note on Petitioner that he had a cellphone in his possession." (Pet. at 7.)  Petitioner stood outside the cubicle during the search which included all of his personal property and that of the other two inmates.  He observed the Officer handle his coat "in a very rough manner looking for the allegded [sic] cellphone in the coat's lining."  (Pet. at 7.)

After the officer gathered petitioner's personal property, Mr. Lang was escorted to the Lieutenant's office.  He claims his prison issued clothing was left in the cubicle.  Before walking outside, the officer allegedly refused petitioner's request to wear the coat jacket he left behind.  Instead, a prisoner working as a Unit Orderly was allegedly directed to take petitioner's clothing and bedding to the laundry.  Mr.  Lang claims he observed the inmate place his things near the bathroom trash cans for pick-up the following day.  It was at that point he tried to retrieve his jacket, but "two other Officers appeared and escorted Petitioner to the SHU."  (Pet.  at 7.)  He claims BOP policy dictated that prison personnel should have placed his clothing in a "gray container to store the institution issued clothes in the locked Unit storage room."  (Pet. at 8.)

On June 24, 2009, Mr. Lang was charged with violating BOP Codes 104 and 329, "Possession of a Weapon" and "Destroying, altering or damaging government property having value of $100 or less." The following day, he was provided a copy of the Incident Report.  After the Unit Disciplinary Committee (UDC) addressed petitioner's report on June 29, 2009, the UDC Chair referred the matter to the Disciplinary Hearing Officer (DHO) for a July 7, 2009 hearing.  A Unit

2

Team member advised Mr.  Lang of his due process rights on the same date the UDC referred the case to the DHO.

At the DHO hearing, the DHO noted that Mr.  Lang's due process rights had been read and reviewed by him earlier and that he understood his rights.  Petitioner waived both his right to staff representation and to call witnesses.  In his statement to the DHO, he denied the charges and claimed the weapon found in the lining of his jacket did not belong to him.

The DHO found Mr.  Lang committed the prohibited acts as charged.  His finding was based, in part, on the following statement from the reporting officer:

> On June 24, 2009, at approximately 9:45 a.m, while assessing the serviceability of institution issued winter coat #1790 issued to inmate James Lang, Reg.  No.  11715-084, I found the pockets of the coat to be altered, and inside the lining of the coat, I found one 4 ½ inch long sharpened weapon.  The replacement cost the institution coat is $58.00.  The sharpened weapon forwarded to the Operations Lieutenant.

(Pet.'s Ex.  F., at 3.)  The DHO also relied on documentary evidence that included: a photograph of the home-made plastic weapon found in the lining of the coat assigned to Mr.  Lang, and a copy of the F.C.I.  Elkton Laundry issue form signed by petitioner on February 1, 2008 attesting to receipt of the coat.  Finally, the value of the coat was determined by an F.C.I.  Elkton inmate Clothing List reflecting a $58.00 replacement cost for a 3X jacket.

While Mr.  Lang's statement to the DHO was also taken into consideration,  the DHO believed it was inaccurate and that petitioner failed to accept full responsibility for his actions.  The DHO noted that the Laundry Foreman who discovered the weapon in Mr. Lang's coat is a trained professional with nothing to gain from providing inaccurate information, while petitioner risked the

loss of GCT. The DHO gave greater weight to the reporting officer's statement, as well as the documentary evidence outlined above and concluded petitioner was guilty of both Code 104 (Possession, Manufacture, or Introduction of a Gun, Firearm, Weapon, Sharpened Instrument Knife, Dangerous Chemical, Explosive, or any Ammunition) and Code 329 (Destroying, Altering or Damaging Government Property of Another Person Having value of $100.00 or less). Mr. Lang was sanctioned as follows for the two offenses:

> Code 104: 60 days disciplinary segregation (suspended 30 days for 180 days clear conduct), the loss of 30 days Good Conduct Time (GCT), 180 days loss of visiting privileges.

> Code 329: 15 days disciplinary segregation (suspended 15 days for 180 days clear conduct $58.00 Monetary restitution

(Pet.'s Ex. F.,at 3.) Although the DHO signed and dated the report on July 28, 2009, it was not delivered to Mr. Lang until September 2, 2009. He complains he had to file a formal grievance before the report was provided to him without an explanation for the delay.

Mr. Lang appealed the DHO's decision. He argued the evidence upon which the DHO based his decision was insufficient. National Inmate Appeals Administrator Harrell Watts denied the appeal on February 17, 2010. Mr. Watts explained that the DHO substantially complied with Program Statement 5270.07. Moreover, he found sufficient evidence existed to find petitioner guilty of both Code 104 and Code 329 violations. The present petition followed.

Mr. Lang believes he was 'set up' by another inmate through an anonymous tip. Prior to the incident, petitioner explained he ran an "inmate store" wherein he

> would allow other inmates to borrow commissary items from him and repay him the following week. As is common in a prison, an inmate will borrow and

4

> then not receive the money he was expecting from the outside and can not repay the inmate store.  A common practice in prison is for the inmate to 'drop' a note to the Officers telling them the store inmate is doing something wrong and having the inmate placed in the SHU for investigation.  Therefore, the inmate who owed the debt will have longer to pay or can hope the store inmate will be transferred and not have to pay at all.

(Pet. at 8.)  He believes he was the victim of a prearranged 'sting' by a former customer who did not want to honor a debt to Mr. Lang.  While a cell phone was not found in his cubicle, the delay between the time his jacket was left near a trash can for laundry pick up until the weapon was discovered the next morning provided an opportunity for someone to tamper with his personal property.  He specifically challenges the BOP's determination that he be held responsible for a weapon found in the lining of his coat when the coat was removed from his cubicle and placed in an unsecured area.  Mr. Lang argues the coat was no longer under his control and the BOP failed to maintain a "chain of custody" over his property.

*Standard of Review*

Once an application for a writ of habeas corpus is filed, a judge "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.  Based on the facts set forth above, petitioner is not entitled to habeas relief in this matter.

*Change in Venue*

A petition seeking habeas corpus relief is appropriate under 28 U .S.C. § 2241 when a prisoner is challenging the fact or duration of his confinement. Preiser v. Rodriquez, 411 U.S.

5

475(1973). The writ of habeas corpus may be granted where the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).  Here, petitioner appropriately raises a habeas claim that the loss of Good Credit Time is improperly lengthening the term of his confinement. An application for a writ of habeas corpus "may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him...." 28 U.S.C. § 2241(d).

Petitioner is a federal prisoner incarcerated at F.C.I.  Elkton, which is located in Mahoning County.  Mahoning County is located within this court's Northern District of Ohio. See 28 U.S.C. § 115.  Consequently, venue was proper in this district when Petitioner's case was filed. Where an action could be properly filed in more than one district, a federal court may transfer the matter, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses to any other district where it might have been brought. See Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 493-94 (1973).  Under that section, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." Kerobo v. Sw. Clean Fuels Corp., 285 F.3d 531, 537 (6th Cir.2002). While a federal court may transfer an action that could be properly filed in more than one district pursuant to 28 U.S.C. § 1404(a), Mr. Lang has not proposed any transfer based on the criteria set forth in the statute.  Thus, a change in venue is not warranted. Instead, it appears the request for a change in venue is really an attempt to level unsupported assertions of judicial bias against the undersigned.

Even though Mr. Lang has failed to justify a change in venue, the court will not disregard his concerns regarding impartiality.  Under 28 U.S.C. § 455(a): "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality

6

might reasonably be questioned." The statute dictates that a  judge must sua sponte recuse himself if he knows of facts that would undermine the appearance of impartiality. <u>Liteky v. United States</u>, 510 U.S. 540, 547-48(1994).  In this case there are no facts that would undermine the impartiality of this court.  A review of the docket and case disposition render petitioner's claims baseless. Habeas petitions are randomly assigned to all active district court judges in the Northern District of Ohio and this court has a record of addressing each case based on the merits of the petition.  Thus, recusal is not appropriate.

*Petitioner's Claims Lack Merit*

The BOP is tasked with the responsibility of administering the federal prison system. <u>See</u> 18 U.S.C. § 4042.  Included in this duty is the obligation to provide for the protection, instruction and discipline of all persons charged with or convicted of offenses against the United States.  42 U.S.C. § 4042(a)(3).  To that end, the BOP has promulgated rules for inmate discipline. <u>See</u> 28 C.F.R. § 541.10, <u>et</u> <u>seq</u>.

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full range of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). Where a prisoner faces the loss of GCT, however, he is entitled to some due process protection. <u>Id</u>. That protection includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. <u>Id</u>.  Disciplinary decisions comport with the requirements of

procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445(1985).

   In this case, Mr. Lang received all of the due process safeguards delineated in Wolff. Contrary to statements in his petition, the record reveals that: 1) Mr. Lange was advised of the charges and of his rights more than 24 hours before each appearance before the DHO (15 days before his appearance); 2) Mr. Lang was given the opportunity to call witnesses; 3) Mr. Lang was given the right to be assisted at the hearing by a staff representative; 4) Mr. Lang was advised in writing of the DHO's findings, the specific evidence relied upon, and the reasons for the sanctions imposed; and 5) Mr. Lang was advised of his right to appeal the sanctions.  Moreover, once petitioner received a copy of the report he was permitted to file an administrative appeal. Thus, the delay between the date the DHO issued the report and his receipt of the incident report did not violate his due process rights. Clearly, Mr. Lang did not suffer an atypical and significant hardship as a result of the delay. See Sandin v. Conner,515 U.S. 472, 483 (1995).

   To the extent petitioner argues there was insufficient evidence to sustain the guilty finding, his claim is without merit. The evidence presented to the DHO consisted of an incident report in which the reporting officer charged that the Laundry Foreman discovered a homemade weapon in the lining of petitioner's jacket on the morning of June 25, 2009.  A photograph of the weapon was also provided.  A Laundry Issue Form with petitioner's signature, indicating receipt, linked the jacket to the petitioner.  Moreover, Mr. Lang did not deny ownership of the jacket. Damage to the jacket was sufficient that it required full replacement and the cost was verified at $58.00.  Although he took advantage of his opportunity to testify at the hearing, there is no suggestion that he raised the 'chain of custody' issue during his DHO hearing.  Even if he did,

however, considering the totality of the circumstances, the DHO had some evidence to find petitioner

guilty of violating Codes 104 and 329.

*Conclusion*

Based on the foregoing, this petitioner's Motion for Change of Venue is **denied** and

the petition is **dismissed** with prejudice. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that

an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

s/Peter C. Economus
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE